UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN WORDS,

        Plaintiff,                CIVIL ACTION NO. 11-CV-14261

vs.

                                        DISTRICT JUDGE STEPHEN J. MURPHY, III

UNITED STATES OF             MAGISTRATE JUDGE MONA K. MAJZOUB
AMERICA, et. al.,

        Defendants.
_____/

### REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that Defendants' amended motion to dismiss (docket no. 13) be terminated and Plaintiff be granted leave to file an amended complaint.

**II.**    **REPORT:**

This matter comes before the Court on the amended motion to dismiss filed by Defendants United States of America, J.S. Walton, William Malatinsky, Restituto Pomaloy, Stephen Gidal, and Eleizer Sta Cruz. (Docket no. 13). Plaintiff filed a letter that responds to the motion and asks for leave to file an amended complaint. (Docket no. 24). Defendants did not file a reply to the letter. This action has been referred for all pretrial purposes. (Docket no. 22). The Court dispenses with oral argument on the motion pursuant to E.D. Mich. LR 7.1(f). The motion is ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

**A.**    **Procedural History and Facts**

Plaintiff is a federal inmate presently incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri. He is currently serving a sixty month prison term following his

1

conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On September 28, 2011, Plaintiff filed the instant complaint pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), complaining of actions that occurred while he was incarcerated at the Federal Correctional Institution in Milan, Michigan (FCI Milan). The complaint alleges that Defendant United States of America is liable for the negligent acts of several employees of the Federal Bureau of Prisons. It also alleges that the individual Defendants violated the Eighth Amendment of the United States Constitution by being deliberately indifferent to his medical need, namely diabetes.[1] Defendants to this action are the United States of America, FCI Milan Warden J.S. Walton, FCI Milan Clinical Director Dr. William Malatinsky, and FCI Milan Physician Assistants Restituto Pomaloy, Stephen Gidal, and Eleizer Sta Cruz. The complaint also identifies Defendant Michael Fortune, however this Defendant is not named in the case caption and the docket does not show that he has appeared or that he was served with a copy of the complaint.

On March 12, 2012 Defendants filed the instant amended motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Subsequently, on Plaintiff's request the Court adjourned resolution of Defendants' motion and referred this matter to the Court's Pro Bono Committee to determine whether the Committee could locate pro bono counsel willing to represent Plaintiff. (Docket nos. 17, 18). The Court found that Plaintiff's case merited the assistance of an attorney if one could be found because the allegations in his complaint were lengthy and complex, they involved a number of different Defendants, and they addressed actions spanning a two-year

---

[1] In *Bivens*, the Supreme Court held that the Constitution supports a private cause of action for damages against federal officials just as 42 U.S.C. § 1983 provides a private cause of action against state officials.

period and involving two surgeries. When no counsel appeared for Plaintiff at the end of the sixty day adjournment, the Court instructed Plaintiff that he must proceed pro se and referred this matter to the undersigned for determination. (Docket nos. 21, 22). More than four months later, Plaintiff sent a letter to the Court which was docketed October 25, 2012. (Docket no. 24). The letter again requests appointment of counsel and asks for leave to file an amended complaint to resolve issues raised in Defendants' motion to dismiss. (Docket no. 24).

The undersigned has reviewed Plaintiff's complaint and will summarize its allegations. In his complaint, Plaintiff alleges that he reported to FCI Milan on July 22, 2009 at which time he underwent a medical intake screening with Defendant Pomaloy. (Docket no. 1, ¶ 11). He alleges that he told Defendant Pomaloy that he was taking insulin to treat his diabetes, along with other medications for other chronic medical conditions. He alleges that he did not receive insulin or medication from July 23 through July 27, 2009, and he claims that he was not instructed on the facility's procedure for blood glucose monitoring, insulin injections, or medication pick up. (Docket no. 1, ¶ 12).

Plaintiff alleges that he was examined by Defendant Malatinsky on July 28, 2009. He states that after he informed Defendant Malatinsky that he had not received insulin, a blood glucose test, or medications since July 22, 2009, he was immediately given a glucose test and insulin injection. (Docket no. 1, ¶ 13). Plaintiff claims that he told Defendant Malatinsky that he had previously had an infection in his left big toe that was treated with an IV pickline and he had no feeling in his toe. He claims that Defendant Malatinsky determined that his toe was okay, prescribed him a low dose aspirin, and informed him that the facility conducts blood glucose monitoring only on Tuesday, Thursday, and Sunday. (Docket no. 1, ¶¶ 13-14). Plaintiff alleges that Defendant Malatinsky

approved his request for one pair of soft-toe shoes in August 2009. (Docket no. 1, ¶ 17). He claims that he received the shoes but was still required to wear steel-toe boots for his work detail.

Plaintiff claims that he was medically evaluated by Defendant Gidal on August 20, 2009. He claims that Defendant Gidal examined his foot after he complained about the infection in his left big toe. He alleges that this examination revealed blisters and sores on his feet. He claims that Defendant Gidal informed him that he would be issued special soft-toe shoes but he must continue to wear steel-toe work boots to his work detail. He claims that Defendant Gidal refused to change his work detail to limited status or provide a medical idle. (Docket no. 1, ¶ 15).

Plaintiff alleges that he was seen at sick call on August 21, 2009 by Defendant Cruz. During this visit, Defendant Cruz provided him with three band-aids and a single use antibiotic cream, and told Plaintiff that he may need oral antibiotics if his condition persists. (Docket no. 1, ¶¶ 16, 18). Plaintiff alleges that Defendant Cruz refused to change Plaintiff's work detail to limited status or provide a medical idle, and ordered Plaintiff to continue to wear his steel-toe boots during work detail hours. (Docket no. 1, ¶ 16).

On September 8, 2009 Plaintiff sent a written request to the medical department complaining of swelling in his foot. (Docket no. 1, ¶ 18). He alleges that Defendant Malatinsky responded to the request the following day and instructed him to sign up for sick call, which he did two days later. Plaintiff alleges that he was examined by Defendant Pomaloy at which time he had a significant amount of drainage from his toe. He claims that Defendant Pomaloy ordered an immediate medical idle, an open-toe shoe that was too large for his foot, one pair of TED hose, an extra pillow and Acetaminophen. Plaintiff claims that he was given a debridement and Defendant Pomaloy changed the dressing on his wound the following two days. (Docket no. 1, ¶ 18).

4

Plaintiff claims that he signed up for sick call on September 17, 2009 with complaints of severe pain. He was evaluated by Defendant Cruz who prescribed an oral antibiotic (Cephalexin) and crutches, but refused his request for a wheelchair. (Docket no. 1, ¶ 19). Plaintiff claims that he became very ill that day with a high fever, chills, sweats, light headedness and intense pain. He claims that he received his prescription antibiotic the next day. Plaintiff reported to sick call on September 18, 2009 where he was seen by Defendant Gidal and told that he was very sick, but he claims he was not provided with medical treatment or a wheelchair. He states that Defendant Gidal advised him to return to his housing unit and sign up for sick call in three days. He claims that he was examined by Defendant Gidal on September 21, 2009 at which time his fever had subsided but the pain in his foot had not. Defendant Gidal allegedly instructed Plaintiff to return to the medical unit on September 23, 2009, which he did. When Plaintiff returned to medical services he asked to see Defendant Gidal. Plaintiff alleges that the secretary phoned Defendant Gidal and informed him that Plaintiff was in a great deal of pain and had not had a debridement or dressing change for over a week. He claims that Defendant Gidal instructed Plaintiff to return the next day, and commented that Plaintiff was taking one of the most powerful antibiotics on earth and there was nothing he could do. (Docket no. 1, ¶ 21).

Plaintiff claims he returned to medical services on September 25, 2009 where he was given a debridement and dressing change by Defendant Cruz. (Docket no. 1, ¶ 22). He also claims that he was examined by Defendant Malatinsky who ordered a daily dressing change for the wound. Plaintiff alleges that Michael Fortune handled Plaintiff's dressing changes on September 26 and 27 and informed Plaintiff that his condition was very serious. (Docket no. 1, ¶¶ 23-24). He claims that he was seen on September 28, 2009 by Defendant Pomaloy who consulted with Defendant

5

Malatinsky and immediately transported him to a hospital. (Docket no. 1, ¶ 25). He claims that his left big toe was amputated within a few hours of his arrival at the hospital. He claims that Defendants never attempted to utilize an IV pickline to treat his condition. (Docket no. 1, ¶ 26).

Plaintiff alleges that he was transferred to a hospital two years later, in August 2011, and treated for an infection "that had originated in his left big toe." (Docket no. 1, ¶ 27). He claims that the hospital doctors began an IV pickline but could not stop the infection and he had his left leg amputated from the knee down. (Docket no. 1, ¶¶ 27-28).

**B.     Standard**

Because Defendants have challenged jurisdiction pursuant to Rule 12(b)(1), Plaintiff bears the burden of proving jurisdiction to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). A "plaintiff's burden to prove federal question subject matter jurisdiction is not onerous." *Metro Hydroelec. Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)). Plaintiff must "show that the complaint alleges a claim under federal law and that the claim is substantial." *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citation and internal quotation marks omitted). If the Court decides that it lacks subject matter jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) motions fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

> A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the [complaint] as true and construed in the light most favorable to the nonmoving party.
>
> A factual attack . . . is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter

> jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Id*. (emphases and citations removed).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a complaint. When determining a motion under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pled factual allegations as true, and determine whether the plaintiff's allegations present plausible claims. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). To survive a Rule 12(b)(6) motion to dismiss "the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted). A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable claim can not survive a Rule 12(b)(6) motion. *Id*. The complaint's " '[f]actual allegations must be enough to raise a right to relief above the speculative level;' they must 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 570 (2007)).

**C.     Analysis**

Defendants allege that Plaintiff failed to exhaust his administrative remedies under the FTCA with regard to his allegations concerning the amputation of his left leg from the knee down, and failed to exhaust his *Bivens* claims regarding the amputation of his left leg, failure to provide appropriate shoes, and failure to put him on a medical idle. They also

7

argue that Plaintiff did not make any allegations in the complaint specific to Defendant Walton. In fact, Defendants allege that it was Assistant Warden M. Stancil who had contact, albeit minimal, with the issues addressed in Plaintiff's claims and not Defendant Walton. Defendants further contend that Plaintiff's *Bivens* claim against the individual Defendants is barred by qualified immunity.

In his letter to the Court, Plaintiff asks for leave to file an amended complaint for the purpose of correcting the issue with Defendant Walton by presumably naming Assistant Warden M. Stancil as the proper Defendant, clarify whether Michael Fortune is a named Defendant, and amend the dates in which he was without insulin treatment to July 23, 2009 through July 28, 2009. (Docket no. 24). He also states that he will more clearly articulate facts to show deliberate indifference and he will exhaust his administrative remedies regarding his claims under the FTCA and *Bivens* that involve the amputation of his left leg from the knee down.

The Court is required to freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). A plaintiff's request for leave to amend should be denied if amendment would be futile. *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). Here, since Plaintiff did not attach a copy of the proposed amended complaint to his request, it is impossible for the Court to determine whether allegations made in an amended complaint would be futile.

*1.    Exhaustion of FTCA Claims Related to Amputation of Plaintiff's Left Leg*

Defendants contend that Plaintiff failed to exhaust his administrative remedies under the FTCA with regard to his allegations concerning the amputation of his left leg from the

8

knee down. If Defendants' allegation is true, it would be futile for Plaintiff to include this claim in an amended complaint.

The FTCA provides a limited waiver of sovereign immunity for plaintiffs seeking to pursue tort claims against the United States. *See Smith v. United States,* 507 U.S. 197, 203 (1993) (citation omitted). 28 U.S.C. § 2675(a) provides that a tort claim shall not be instituted against the United States for money damages arising from a personal injury caused by the negligent or wrongful act of a government employee acting within the scope of his employment "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail" or six months have passed since the claim was presented to the agency and no decision has been reached. To fall under the waiver a prospective plaintiff must strictly adhere to the statute's procedural requirements. *Blakely v. United States,* 276 F.3d 853, 864–65 (6th Cir. 2002) (explaining that the circumstances of the waiver of sovereign immunity must be "scrupulously observed").

Defendants attached to their motion a copy of Plaintiff's FTCA administrative tort claim and the Bureau of Prison's response. (Docket no. 13, ex. 1-2). Plaintiff also attached copies of these documents to his complaint. (Docket no. 1). The documents show that Plaintiff filled out an administrative claim in December 2010. The claim was denied April 1, 2011. In the present complaint, Plaintiff alleges that his left leg was amputated in or around August 2011. For obvious reasons, the administrative claim does not address the amputation of Plaintiff's left leg and thus does not exhaust this claim.

*2.     Exhaustion of Bivens Claims*

9

Next, Defendants argue that Plaintiff failed to exhaust his *Bivens* claims regarding the amputation of his left leg, failure to provide appropriate shoes, and failure to put him on a medical idle. Documents attached to Defendants' motion and Plaintiff's complaint show that Plaintiff presented his issue informally to the staff before he submitted a formal written Administrative Remedy Request. (Docket no. 1). At this stage of the grievance process, Plaintiff indicated that his complaint was that he was "receiving medical care that is clearly reactive in nature and that has caused the removal of my left big toe and that my symptoms I continue to experience are threatening my nine (9) remaining toes, and quite possibly both of my feet." (Docket no. 1).

Plaintiff's informal complaint was not resolved, so he submitted a formal written Administrative Remedy Request. The Request for Administrative Remedy was denied on October 25, 2010. (Docket no. 1). Plaintiff filed an appeal of the denial in early November 2010. (Docket no. 1). In the appeal, Plaintiff stated for the first time that Defendants acts of deliberate indifference included failure to provide a medical idle, failure to provide a properly sized open-toed boot, and failure to provide a wheelchair, among other things. The appeal was considered and denied by the Federal Bureau of Prisons on November 23, 2010.

Plaintiff was notified that he could submit an appeal to the Office of General Counsel in Washington, D.C. provided the appeal was received in the Office of General Counsel within thirty days from November 23, 2010. Plaintiff's appeal to the Office of General Counsel is dated January 12, 2011. (Docket no. 1). His appeal was rejected on February 1, 2011 as untimely. (Docket no. 13, ex. 8). On February 14, 2011 Plaintiff resubmitted his appeal as he was directed to do, and stated that the late filing was not his fault. (Docket no.

10

13, ex. 14). Defendants contend that no response was provided, so Plaintiff can assume his resubmission was denied.

Plaintiff's resubmitted appeal to the Office of General Counsel was dated February 14, 2011. As noted above, he alleges that his left leg was amputated in or around August 2011. The documents presented to the Court do not show that Plaintiff exhausted his claim related to the amputation of his left leg. Nevertheless, his appeal at one point did address his complaints that Defendants failed to provide a medical idle and properly sized boots. Since the appeal was considered through to the final step of the appeal process and seemingly denied, the undersigned finds that Plaintiff has shown that he exhausted his claims with regard to Defendants' failure to provide a medical idle and properly sized boots.

*3.     Leave to Amend Complaint*

As indicated, Plaintiff asks for leave to file an amended complaint to amend dates, clarify Defendants, and more clearly articulate facts to show deliberate indifference. He also states that he will exhaust his administrative remedies regarding his claims under the FTCA and *Bivens* that involve the amputation of his left leg from the knee down.

The fact that Plaintiff failed to attach a copy of his proposed amended complaint weighs against the granting of his request. However, given Plaintiff's pro se status, and the fact that the Court has recognized that Plaintiff's allegations are lengthy and complex, the undersigned recommends allowing Plaintiff latitude to file an amended complaint. Since no Scheduling Order has yet been entered setting cutoff dates for discovery and dispositive motions, the undersigned finds that Defendants will not be unduly prejudiced if an amended complaint is filed.

The undersigned also finds that it would be futile to incorporate claims in an amended complaint that pertain to the amputation of Plaintiff's left leg unless Plaintiff exhausted that claim prior to filing this lawsuit. The documents submitted to the Court do not establish exhaustion. Plaintiff should be instructed that his amended complaint should only include claims that he believes have been fully exhausted before the lawsuit was filed. With regard to his *Bivens* claim Plaintiff should also be instructed that he should allege facts to show that each Defendant was personally involved in, or otherwise authorized, approved of, or knowingly acquiesced in the alleged unconstitutional conduct. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Allegations against the Warden or Assistant Warden must allege more than that they were simply involved in the denial of a grievance. *See, e.g., Lee v. Mich. Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004).

The undersigned recommends that Defendants' motion to dismiss be terminated and Plaintiff be ordered to file an amended complaint within twenty-one days of entry of an order adopting this Report and Recommendation, if such order is entered. Defendants should then be given their full opportunity to file an answer or other response to the amended complaint. If Plaintiff fails to file an amended complaint by the date set by the Court, Defendants should be permitted to re-file the instant motion or file a different motion for dismissal of Plaintiff's claims as they deem necessary.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to

file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 22, 2013        s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Kevin Words and Counsel of Record on this date.

Dated: January 22, 2013        s/ Lisa C. Bartlett
                               Case Manager