UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN PATRICK WORDS,

      **Plaintiff,**              **CIVIL ACTION NO. 11-14261**

**vs.**                     **DISTRICT JUDGE STEPHEN J MURPHY III**

                             **MAGISTRATE JUDGE MONA K. MAJZOUB**
UNITED STATES OF AMERICA, et al.,

      **Defendants.**

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO STRIKE THE EXPERT TESTIMONY OF DAVID A. LIBERT [65]

Plaintiff Kevin Words, formerly a prisoner with Federal Bureau of Prisons, filed this claim against the United States of America and William Malatinsky (Clinical Director at the Federal Corrections Institute in Milan, Michigan (FCI Milan)) under the Federal Tort Claims Act and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants' failure to provide constitutionally adequate medical care resulted in the unnecessary amputation of his leg.   (*See* docket no. 33.)   Before the Court is Defendants' Motion to Strike the Expert Testimony of David A. Libert, Plaintiff's proposed expert with regard to his FTCA claim.   (Docket no. 57.)   Plaintiff filed a Response (docket no. 63), and Defendants filed a Reply (docket no. 65).   The Motion has been referred to the undersigned for consideration. (Docket no. 59.)   The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e).   The Motion is now ready for ruling.

## I.      Background

1

Plaintiff's claims arise out of the time he served at FCI Milan.  Plaintiff alleges that he reported to FCI Milan on July 22, 2009, and during his intake screening, he informed the prison staff that he suffered from diabetes, the treatment of which required the use of insulin.  While incarcerated at FCI Milan, Plaintiff's care was coordinated by Defendant Malatinsky, with whom Plaintiff met on several occasions.   Plaintiff claims that he was initially denied his insulin and that as early as July 28, 2009, the first time he met with Dr. Malatinsky, he had no feeling in his left big toe, but Dr. Malatinsky determined that the toe was ok.   By August 20, 2009, Plaintiff had blisters and sores on his feet.  Through all of this, though, Dr. Malatinsky (and the other staff at FCI Milan) refused to change Plaintiff's work detail or the requirement that he wear steel-toe boots during detail hours.

By September of 2009, Plaintiff had a significant amount of drainage in his toe, and he was given an open-toe shoe, a pair of TED hose, an extra pillow, Acetaminophen, a debridement, and a dressing on his wound.   And on September 17, 2009, Plaintiff reported that he had a high fever, chills, sweats, light headedness, and intense pain; he was given an oral antibiotic and crutches. On September 28, Plaintiff was taken to the hospital where his left big toe was amputated.   Two years later, Plaintiff's leg was amputated from the knee down for an infection "that had originated in his left big toe."

Plaintiff now offers the testimony of Dr. David A. Libert, M.D., with regard to his FTCA claims.  Defendants challenge Dr. Libert's testimony, arguing that he lacks competency under MCLA 600.2169 and that his causation testimony lacks the appropriate qualifications under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

**II.     Governing Law**

2

A.    **Procedural Application of Fed. R. Evid. 601 and 702**

In federal diversity actions[1], state law governs substantive issues and federal law governs procedural issues. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Rules of evidence are deemed rules of procedure, 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, § 4512 (2d ed.1996); *Salas by Salas v. Wang,* 846 F.2d 897, 905–06 (3d Cir.1988), and therefore, the Federal Rules of Evidence, rather than state evidentiary laws, are held to apply in federal diversity proceedings. *Barnes v. Owens–Corning Fiberglas Corp.,* 201 F.3d 815, 829 (6th Cir.2000); *Grossheim v. Freightliner Corp.,* 974 F.2d 745, 754 (6th Cir.1992); *290 Laney v. Celotex Corp.,* 901 F.2d 1319, 1320 (6th Cir.1990) Indeed, the federal rules themselves provide that they "apply generally to civil actions and proceedings." Fed.R.Evid. 1101(b). Further, this Court has categorically stated that "[t]he admissibility of expert testimony is a matter of federal, rather than state, procedure." *Brooks v. Am. Broad. Cos.,* 999 F.2d 167, 173 (6th Cir.1993).

However, some state evidentiary rules have substantive aspects, thereby defying the substance-procedure distinction and creating a potential *Erie* conflict. *See, e.g., CMI–Trading, Inc. v. Quantum Air, Inc.,* 98 F.3d 887, 891 (6th Cir.1996) (holding that although the parol evidence rule relates to trial procedure, it is substantive in nature); *see also Ungerleider v. Gordon,* 214 F.3d 1279, 1282 (11th Cir.2000) (same). State witness competency rules are often intimately intertwined with a state substantive rule. This is especially true with medical malpractice statutes, because expert testimony is usually required to establish the standard of care. *See Peck v. Tegtmeyer,* 834 F.Supp. 903, 909 (W.D.Va.1992) ("In other words, under the statutory scheme, the standard of care is that which is testified to by an expert qualified under the statute."), *aff'd,* 4 F.3d 985 (4th Cir.1993) (unpublished per curiam). The Federal Rules of Evidence resolve this potential conflict between state and federal law on the issue of witness competency. *See generally* Joseph M. McLaughlin, 3 WEINSTEIN'S EVIDENCE ¶ 601[05] (2001). Rule 601 incorporates the *Erie* mandate by expressly providing that "State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." Fed.R.Evid. 601; *cf.* Fed.R.Evid. 302 (state law applies in questions of presumption); Fed.R.Evid. 501 (questions of privilege "shall be determined in accordance with State law").

*Legg v. Chopra,* 286 F.3d 286, 289-90 (6th Cir. 2002) (footnote omitted).   The Sixth Circuit has

further addressed the two-step inquiry necessary in such matters:

---

[1] As Defendants note, while the matter before the Court is not a diversity action, the FTCA requires the Court to apply state substantive law.   (*See* docket no. 57 at 11 n.2 (citing *Mann v. United States*, 2012 WL 273690 (D. Ariz. 2012)).)

First, we consider witness competency—which "is 'intimately intertwined' with the [state] substantive law"—a substantive consideration under Rule 601. *Legg v. Chopra,* 286 F.3d 286, 291 (6th Cir.2002). Second, we consider the witness's qualification, a "procedural" gatekeeping consideration under Rule 702 and *Daubert. Id.* at 291–92. ("We therefore find no conflict between Tenn.Code Ann. § 29–26–115(b) and Fed.R.Evid. 702, since the first is directed at establishing the substantive issue in the case, and the second is a gatekeeping measure designed to ensure "fairness in administration" of the case."). . . . [T]he former inquiry . . . "reflects the intimate relationship between the standard of care and the qualification requirements of the medical expert who will establish that standard." *Id.* at 291. . . . [T]he latter . . . is "directed at the science and methodology behind the witness's testimony," [and is] a question of scientific qualification. *Ibid.*

*Bock v. Univ. of Tennessee Med. Grp., Inc.*, 471 F. App'x 459, 461-62 (6th Cir. 2012) (applying

this analysis in considering Tenn.Code Ann. § 29-26-115(b)).

## B.    Medical Expert Testimony in Michigan – MCLA §§ 600.2169, 600.2912a

(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is

4

> a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.
>
> (c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
>
>> (*i*) Active clinical practice as a general practitioner.
>>
>> (*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed.

Mich. Comp. Laws Ann. § 600.2169 (West).

Plaintiff has the burden of proving that "The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury."  Mich. Comp. Laws Ann. § 600.2912a (West).   Moreover, a party proposing to call an expert has the burden of establishing the expert's qualifications.   *Gay v. Select Specialty Hospital*, 295 Mich. Ct. App. 284, 293 (2012).

### C.  Fed. R. Evid. 702 and *Daubert*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and embodies a liberal policy of admissibility.   *United States v. Stone*, No. 10-20123, 2012 WL 219435, at *1 (E.D. Mich. Jan. 25, 2012) (citing *Holbrook v. Lykes Bros. S.S. Co., Inc*., 80 F.3d 777, 780 (3d Cir. 1996)).   Under Rule 702, a qualified expert witness may testify if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.   Fed. R. Civ. P. 702.   All doubts as to the usefulness of an expert's testimony should be resolved in favor of admissibility. *Marmo v. Tyson Fresh Meats, Inc*., 457 F.3d 748, 758 (8th Cir. 2006).

Courts should consider the following factors when determining the admissibility of scientific expert testimony: (1) whether the expert's theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique is generally accepted in the relevant scientific community. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993). Again, the party proposing the expert has the burden of establishing the expert's qualifications. *Id.* at 592 n.10. But the *Daubert* standard is flexible and is only intended to "strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009) (citation omitted).

## III.   Analysis

Defendants assert that Dr. Libert fails to meet the requirements of MCLA 600.2169 because regardless of his area of specialty and regardless of his current practice, Plaintiff has failed to show that "during the year immediately preceding the date of the occurrence that is the basis for the claim or action" Dr. Libert "devoted a majority of his or her professional time" to active clinical practice or the instruction of students.   (Docket no. 57 at 15-16.)   To the contrary,

6

Defendants assert, Dr. Libert's deposition testimony and his curriculum vitae confirm that he spent a majority of his time "performing medical legal work, such as being an expert witness" and that he "spent only five hours per week performing actual family practice."   (*Id.*)   Plaintiff contends that Defendants misconstrue the record and that Dr. Libert has been a "practicing physician" for the last several decades.   (Docket no. 63 at 6-7.)

Plaintiff's alleged injuries occurred in September of 2009 and September of 2011; thus, the relevant time periods with regard to Dr. Libert's qualifications under MCLA 600.2169 are September of 2008 through September of 2009 and September of 2010 through September of 2011.   Dr. Libert's CV and his associated deposition testimony are illustrative:

- From October 1994 to the present, Dr. Libert has been employed with First Choice Medical Center as an "owner and practicing physician."   (Docket no. 57-2 at 5.)   He spends 40% of his time performing "medical legal work, such as being an expert witness in a case like this" and 60% of his time "doing independent medical evaluations for insurance companies."   (Docket no. 57-3 at 10:18-24.)

- From February 2009 to the present, Dr. Libert has been employed at WeCare TLC, LLC, as a "medical director/physician."   (Docket no. 57-2 at 5.)   WeCare is a "private family medical practice where the employees of a company called MedWatch are the exclusive patient population of the clinic."   (Docket no. 57-3 at 12:1-4.)   Dr. Libert worked at WeCare for "five hours per week."   (*Id.* at 12:10.)

- Beginning in July 2011, Dr. Libert began working for Matrix Medical Network as a "collaborating physician."   (Docket no. 57-2 at 5.)   He "do[es] some peer review looking at nurse practitioners" and "evaluations of Medicare participants."   (Docket

7

no. 57-3 at 10:25-11:3.).

- From October 2005 through December 2011, Dr. Libert was employed by MedWatch, LLC, as a "medical director/consulting physician in medical review services." (Docket no. 57-2 at 5.)  "Medwatch is a peer review company that does retrospective reviews of hospital care, physical therapy."  (Docket no. 57-3 at 12:14-16.)

- Dr. Libert currently works at Advantacare of Florida three days a week as a practicing physician, with about 40% of his work on slip-and-fall accidents and the other 60% of his work on "more traditional family medicine," but Dr. Libert did not start at Advantacare until November of 2011, approximately two months after Plaintiff's second amputation.   (*See* docket no. 57-2 at 5; 57-3 at 10:9-17.)

As Defendant contends, during the relevant time periods, Dr. Libert only spent, at most, five hours a week working in active clinical practice; the majority of his time was spent conducting reviews, doing independent medical reviews for insurance companies, or performing medical legal work.

> [A]n expert devotes "a majority of his or her professional time" and is qualified under the statute where he or she spends the bulk of their professional time, as opposed to recreational or other personal time, engaged in either the active practice of medicine or teaching. He or she may be qualified as an expert even if they are professionally employed part time, provided they spend a majority of that professional time either practicing medicine or teaching. In other words, a proposed expert who spends a majority of their professional time engaged in other professional pursuits, including testifying as an expert witness, would not be qualified.
>
> *Gawel, Estate of, ex rel. Gawel v. Schatten*, 109 F. Supp. 2d 719, 723-24 (E.D. Mich.

2000).  Thus, regardless of the work Dr. Libert performs today, and regardless of the work Dr. Libert performed before 2009, Plaintiff has failed to meet his burden of showing that Dr. Libert

8

meets the requirements of MCLA 600.2169.   Plaintiff has failed to address this deficiency.   And although the Court acknowledges that Dr. Libert has testified numerous times as an expert witness, all of his testimony has been given in Seminole County, Florida, which does not require him to meet Michigan statutory standards.   (*See* docket no. 57-2 at 4.)   Therefore, the Court will grant Defendants' Motion and strike Dr. Libert's testimony in this matter.[2]

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike the Expert Testimony of David A. Libert [57] is **GRANTED**.

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated:   December 3, 2015                     s/ Mona K. Majzoub
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated:   December 3, 2015                     s/ Lisa C. Bartlett
                                              Case Manager

---

[2] Because the Court finds that Defendants' Motion should be granted for Plaintiff's failure to meet the requirements of MCLA § 600.2169, the Court need not address Defendants' Rule 702 argument.